ALABAMA DRY DOCK AND SHIP-
BUILDING CO., Petitioner,

v.

Frank KININESS and Director, Office of
Workers' Compensation Programs, Unit-
ed States Department of Labor, Respon-
dents.

No. 76–2505.

United States Court of Appeals,
Fifth Circuit.

June 16, 1977.

W. Boyd Reeves, Mobile, Ala., for petitioner.

Richard F. Pate, Mobile, Ala., for Frank Kininess.

Laurie M. Streeter, Associate Sol., U. S. Dept. of Labor, Ronald E. Meisburg, Atty., U. S. Dept. of Labor, Linda L. Carroll, Dept. of Labor, Washington, D. C., for Director, Office of Workers' Compensation Programs.

Before MORGAN and RONEY, Circuit Judges, and KING\*, District Judge.

RONEY, Circuit Judge:

Alabama Dry Dock purchased a "Goliath" gantry crane from Holland and, before assembling it for use in shipbuilding, stored it on a back lot of the company's shipyard. Employee Frank Kininess, assigned the duty of sandblasting the disassembled crane to remove rust, fell from an elevated hopper and fractured his pelvis. He sought benefits under the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. §§ 901 *et seq.*, and prevailed before both an administrative law judge and the Benefits Review Board, U. S. Department of Labor. Alabama Dry Dock appeals. Because the Board correctly determined that Kininess, at the time of this injury, was engaged in maritime employment on a site within the jurisdiction of the Act, we affirm.

This appeal presents three issues, which the Court has recently addressed at length. *See Jacksonville Shipyards v. Perdue*, 539 F.2d 533 (5th Cir. 1976), *petition for cert. filed*, No. 76–1166, 45 U.S.L.W. 3588 (Feb. 1, 1977). *See also Ingalls Shipbuilding Corp. v. Morgan*, 551 F.2d 61 (5th Cir. 1977). As applied here, the questions are whether Kininess was a covered maritime employee under § 902(3); on a maritime situs within § 903(a); and, if so, whether the Compensation Act is constitutional.

Consideration of those questions must take into account the policy that the Act is to be liberally construed to promote its compensatory purpose. *See Voris v. Eikel*, 346 U.S. 328, 333, 74 S.Ct. 88, 98 L.Ed. 5 (1953). In the administrative scheme, fact-finding is done by the administrative law judge, and his findings are to be upheld if supported by substantial evidence. *Presley v. Tinsley Maintenance Service*, 529 F.2d 433, 436 (5th Cir. 1976). While the issues of statutory construction presented on this appeal do not fall within the presumption of coverage mandated by the Act, 33 U.S.C.A. § 920(a), *see Stockman v. John T. Clark & Son of Boston, Inc.*, 539 F.2d 264, 269 (1st Cir. 1976), *petition for cert. filed*, No. 76–571, 45 U.S.L.W. 3355 (Nov. 9, 1976); *Pittson Stevedoring Corp. v. Dellaventura*, 544 F.2d 35, 48 (2d Cir. 1976), *cert. granted sub nom., Northeast Terminal Marine, Inc. v. Caputo, 429 U.S. 998, 97 S.Ct. 522, 50 L.Ed.2d 607 (1976)*, the resolution of *those issues by the Benefits Review Board is to be affirmed if a reasonable legal basis supports the Board's conclusions.* See Cardillo v. Liberty Mutual Ins. Co., *330 U.S. 469, 478–479, 67 S.Ct. 801, 91 L.Ed. 1028 (1947)*. Contra, Pittson, supra, *544 F.2d at 48–50*.

*Perdue* discussed the statutory definition of a covered "employee" § 902(3), and concluded a worker falls within that definition

\* District Judge of the Southern District of Florida sitting by designation.

if at the time of his injury (a) he was performing the work of loading, unloading, repairing, building or breaking a vessel, or (b) although he was not actually carrying out these specified functions, he was "directly involved" in such work. 539 F.2d at 539–540 (footnote omitted). Alabama Dry Dock argues Kininess was not "directly involved" in shipbuilding because the crane which he was sandblasting had not yet been assembled.

Two considerations lead to a rejection of that argument. First, as the administrative law judge concluded, Kininess' sandblasting "was an essential aspect of the Employer's ship repair and shipbuilding enterprise." App. 17. Maintenance of the crane was necessary to enable it to perform its eventual function of hauling fabricated ship sections to the water's edge. Accordingly, the Board had a reasonable basis for finding Kininess was "directly involved" in shipbuilding. The case relied on by the company, *Jacksonville Shipyards v. Skipper*, 539 F.2d 533 (5th Cir. 1976) (decided with *Perdue*), is different. In *Skipper*, the Court held a worker injured while salvaging steel from an abandoned shop was not a covered employee. The purpose of the worker's duties was to provide materials for a plant which would manufacture equipment, not ships. 539 F.2d at 542. Consequently he, unlike Kininess, was not directly furthering the shipbuilding goals of his employer.

■ Second, coverage under the Act should not depend on whether the crane was in actual operation when Kininess was injured. The "discontinuity in time" does not "alter the essential nature" of the work Kininess was doing. *Ayers Steamship Co. v. Bryant*, 539 F.2d 533, 544 (5th Cir. 1976) (decided with *Perdue*). Repair and maintenance of machines used in shipbuilding is an essential aspect of the business. *J. A. McCarthy, Inc. v. Bradshaw*, 547 F.2d 1161 (3d Cir. 1977) (Local Rule 12(6)) (forklift repairman covered); *Vinciquerra v. Transocean Gateway Corp.*, 1 B.R.B.S. 523 (1975) (mechanic covered). Of necessity machines are not in use while they are being serviced. While a distinction might be drawn between a crane being held in storage pending use and an active crane disassembled for repair, the policy of liberal construction indicates such fine lines are inappropriate when determining coverage under the Act.

■ *Perdue* also provides an explanation of the Act's limitation of coverage to employees injured on a maritime situs, § 902(3). The Court said:

we will look past an area's formal nomenclature and examine the facts to see if the situs is one "customarily used by an employer in loading, unloading, repairing or building a vessel." The clear statutory scheme is to cover employees who are injured while performing certain types of work in an area which is customarily used for such work.

539 F.2d at 541. Alabama Dry Dock cites language in the statute which defines the situs as one "adjoining" navigable waters. The company argues that because the back lot in which the crane was stored did not abut the water, it is not a maritime situs. The record does not disclose the position of the lot, and the estimates in the briefs place it from 150 to 2,000 feet from the water's edge. In any event, the physical distance is not decisive here. The test is whether the situs is within a contiguous shipbuilding area which adjoins the water. Alabama Dry Dock's shipyard adjoins the water. The lot was part of the shipyard, and was not separated from the waters by facilities not used for shipbuilding. *See Perdue, supra,* 539 F.2d at 542. Furthermore, the lot itself was "customarily used" for the maintenance and repair work engaged in by Kininess. It was an area in which work directly related to shipbuilding was taking place. *Cf. Stewart v. Brown & Root, Inc.,* 5 B.R.B.S. 37 (ALJ) (Sept. 30, 1976) (worker in shipyard under construction not covered.)

■ Alabama Dry Dock's final contention is that the statute is unconstitutional if it extends beyond the traditional boundaries of admiralty jurisdiction, which ended at the gangplank. *Halter Marine Fabricators v. Nulty*, 539 F.2d 533 (5th Cir. 1976), a companion case to *Perdue,* rejected a similar argument on the ground that "ship-

building employees beside the navigable waters" were sufficiently maritime to allow congressional regulation under admiralty jurisdiction. 539 F.2d at 546. *Accord Dravo Corp. v. Maxin,* 545 F.2d 374 (3d Cir. 1976), *petition for cert. filed,* No. 76–1093, 45 U.S. L.W. 3577 (Feb. 22, 1977). We see no reason to question that holding. Admiralty jurisdiction has, in the past, changed as "new conditions give rise to new conceptions of maritime concerns." *Detroit Trust Co. v. The Thomas Barlum,* 293 U.S. 21, 52, 55 S.Ct. 31, 41, 79 L.Ed. 176 (1934).

AFFIRMED.