**TEXPORTS STEVEDORE COMPANY,**
and Texas Employers' Insurance
Association, Petitioners,

v.

**Murl J. WINCHESTER and Director, Office of Workers' Compensation Programs, U. S. Department of Labor, Respondents.**

No. 76–4100
Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

June 20, 1977.

E. D. Vickery, W. Robins Brice, Houston, Tex., for petitioners.

Alfred G. Albert, Acting Sol., Laurie M. Streeter, Assoc. Sol. of Labor, U. S. Dept. of Labor, for Director, Office of Workers' Com. Programs.

Ronald E. Meisburg, Atty., U. S. Dept. of Labor, Washington, D. C., for respondents.

Before GOLDBERG, CLARK and FAY, Circuit Judges.

PER CURIAM:

Under the Longshoremen's and Harbor Workers' Compensation Act, as amended, 33 U.S.C. §§ 901 *et seq.,* respondent, Murl Winchester, was awarded, inter alia, by the Administrative Law Judge his medical expenses incurred (or to be incurred) as a result of an injury sustained while working for petitioner, Texports Stevedore Company. The Benefits Review Board affirmed that decision and petitioner and its insurance company, Texas Employers' Insurance Association, appeal on two grounds. Specifically, the issues are (1) whether one, whose job it is to maintain and repair gear used in the loading and unloading of ships, is an employee within the meaning of § 2(3) of the Act, as amended, 33 U.S.C. § 902(3), and (2) whether a gear room, located approximately five blocks from the nearest dock, in an area utilized for gear rooms, is a situs within the meaning of § 3(a) of the Act, as amended, 33 U.S.C. § 903(a). On the basis of the statutes and the recent

---

* Rule 18, 5 Cir.; see *Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al.,* 5 Cir. 1970, 431 F.2d 409, Part I.

opinion, *Jacksonville Shipyards, Inc. v. Perdue,* 539 F.2d 533 (5th Cir. 1976), we affirm.

At the time of the accident, respondent had been a longshoreman for five years and had worked for petitioner for nine months. His position was termed "gear man" and his duties included supplying and repairing gear (i. e., tools and machinery) used by the stevedores in loading and unloading ships.

Texports maintained three "gear rooms" (facilities for the storage and maintenance of the gear) in the vicinity of the Houston Shipping Channel docks. Due to the lack of space at or near the docks themselves the third gear room, called the N Avenue gear room, was located five blocks from the nearest dock.

Generally, each day respondent would report to the N Avenue gear room where he was given his daily work assignment. His work—which essentially consisted of maintaining, repairing, and supplying gear which was used in the loading and unloading of ships—was performed at each of the gear rooms, at dockside, and on board ships. His duties were not limited to times when Texports was engaged in its loading and unloading activities. Even when there were no ships to load or unload the gear rooms operated.

On June 3, 1974, while in the course of his employment for Texports, Winchester tripped and fell against a forklift, striking his face. On that date Texports was not loading or unloading any ship.

The two sections of the Act[1] cited in the statement of issues above set forth a coverage ". . . test which requires (1) that the claimant have been engaged in 'maritime employment' and (2) that the injury have taken place upon the situs specified in the Act." *Jacksonville Shipyards, Inc. v. Perdue,* 539 F.2d 533, 538 (5th Cir. 1976).

Judge Tjoflat explained in *Perdue* each prong of the coverage test. With respect to the first part he stated:

. . . an injured worker is a covered "employee" if at the time of his injury (a) he was performing the work of loading, unloading, repairing, building, or breaking a vessel, or (b) although he was not actually carrying out these specified functions, he was "directly involved" in such work. [Footnote omitted].

*Supra,* pp. 539–540.

For the second prong Judge Tjoflat stated that the courts must:

. . . examine the facts to see if the situs is one "customarily used by an employer in loading, unloading, repairing or building a vessel."

*Supra,* p. 541.

Generally, there are recognized standards the court of appeals applies in reviewing an appeal from the Benefits Review Board. Judge Tjoflat aptly stated:

. . . the Act is to be liberally construed in favor of injured workers, see *Voris v. Eikel,* 346 U.S. 328, 333, 74 S.Ct. 88, 98 L.Ed. 5 (1953). We are also bound by a statutory presumption that an individual's claim comes within the Act's coverage. 33 U.S.C. § 920(a). Finally, we will not set aside an award made by the Benefits Review Board so long as it is supported by substantial evidence on the record considered as a whole, and so long as there is a reasonable legal basis for the Board's conclusions. See *O'Leary v. Brown-Pacific-Maxon, Inc.,* 340 U.S. 504, 508, 71 S.Ct. 470, 95 L.Ed. 403 (1951); *Cardillo v. Liberty Mutual Ins. Co.,* 330 U.S. 469, 478–79, 67 S.Ct. 801, 91 L.Ed. 1028 (1947). [Footnote omitted]

*Jacksonville Shipyards, Inc. v. Perdue, supra,* p. 541.

---

1. The term "employee" means any person engaged in maritime employment, including any longshoreman or other person engaged in longshoring operations, and any harbor worker including a ship repairman, shipbuilder, and shipbreaker . . . 33 U.S.C. § 902(3).

Compensation shall be payable under this chapter in respect of disability or death of an employee, but only if the disability or death results from an injury occurring upon the navigable waters of the United States (including any adjoining pier, wharf, dry dock, terminal, building way, marine railway, or other adjoining area customarily used by an employer in loading, unloading, repairing, or building a vessel). 33 U.S.C. § 903(a).

Based on the facts and the test in *Perdue* we find that Winchester was properly determined to be an "employee" under 33 U.S.C. § 902(3). Although no ships were being loaded or unloaded on the day of the injury, Winchester's job of repairing and maintaining the gear used by the longshoremen was a continuous, direct involvement with maritime activities.

Respondent's accident did not occur on the dock or pier adjoining the Houston Shipping Channel but at a gear room several blocks away. Bearing in mind the test expounded by Judge Tjoflat in *Perdue,* it is clear that the N Avenue gear room, housing the gear used in loading and unloading cargo from ships, was a situs customarily used for maritime purposes as provided by the statute. Acknowledging the distance from the gear room to the water, we cannot, after giving the Act a liberal construction, reverse respondent's coverage just because the harbor area provided inadequate facilities for Texports to house their equipment.

Therefore, finding there was a legal and factual basis for the Board's decision, we affirm.