655 F.2d 86
 John F. ALFORD, Anthony R. Buller, Hector Cantu and
Director, Office of Workers' Compensation
Programs, United States Department of
Labor, Petitioners,
v.
AMERICAN BRIDGE DIVISION, UNITED STATES STEEL CORPORATION, Respondent.
 Nos. 78-1901, 78-1633, 78-1607, 78-1601, 78-1598 and 78-1544.
 United States Court of Appeals,
Fifth Circuit.
 Sept. 4, 1981.
 
 Stephenson, Thompson & Dies, Martin W. Dies, Orange, Tex., Louis Bien, Galveston, Tex., Schechter & Shelton, Michael Shelton, Houston, Tex., Stanley K. George, Port Arthur, Tex., Carin A. Clauss, Sol. of Labor, Laurie M. Streeter, Associate Sol., Mary A. Sheehan, Joshua T. Gillelan and Gilbert T. Renaut, U. S. Dept. of Labor, Washington, D. C., for petitioners.
 Kyle Wheelus, Jr., Beaumont, Tex., for respondent.
 Petitions for Review of Orders of the Benefits Review Board.
 ON PETITION FOR REHEARING
 Before BROWN, GEWIN* and POLITZ, Circuit Judges.
 PER CURIAM:
 
 
 1
 In our original decision, Alford v. American Bridge Division, U. S. Steel Corp., 642 F.2d 807 (5th Cir. 1981), we affirmed the Administrative Law Judge (ALJ) and Benefits Review Board's (BRB) denial of coverage under the Longshoremen's and Harbor Workers' Compensation Act (LHWCA) to Hector Cantu for injuries which he sustained while he was constructing a seventy-five pound black diamond navigational signal which was to be attached to an American Bridge barge loaded with vessel modules. A careful review of the Petition for Rehearing En Banc which attacks this denial, convinces us that we made an error with respect to that portion of the decision. In all other respects our decision remains unaffected.
 
 
 2
 We originally held that Cantu did not qualify as a covered "employee" under the Act because the construction of the black diamond did not "qualif(y) as traditional maritime activity or reac(h) the level of involvement in the shipbuilding process described as fundamental, integral or essential." Alford, 642 F.2d at 813. Rather, the marker "was merely to be used in maritime commerce as a navigational traffic sign and we find this use too tenuous a connection to shipbuilding or ship repairing as required under the LHWCA." Id.
 
 
 3
 A reconsideration of the principles of "maritime employment status" developed in prior decisions, persuades us that Cantu is entitled to coverage. Recently, Trotti & Thompson v. Crawford, 631 F.2d 1214 (5th Cir. 1980), and many other past decisions of the Supreme Court and this Court have held that making and maintaining facilities and items of equipment for loading and unloading vessels[1] and for building them[2] are covered operations. Trotti involved a land-based carpenter who was injured while constructing a pier a facility essential to maritime commerce. The Court there reasoned that:
 
 
 4
 Although we minimize their importance, both (dry docks and piers) are aids to maritime commerce and are used in support of navigation even though the analogy to traditional aids to navigation is a little far-fetched.
 
 
 5
 Trotti, 631 F.2d at 1219 (emphasis added).
 
 
 6
 Even more recently, we have canvassed the many cases in Hullinghorst Industries v. Carroll, 650 F.2d 750, 751 (5th Cir.). Since the black diamond navigational signal was essential for a tow exceeding 600 feet in length and was being constructed for installation on an American Bridge Barge to be used in transporting ship modules to the shipyard in the East, the activity was sufficiently related to maritime commerce as to be maritime employment.
 
 
 7
 We now find that the analogy between a black diamond navigational signal, which is required by the U.S. Coast Guard as a daytime indicator on barges towing 600 feet or more, and traditional "aid to navigation" is not so "tenuous" as to deny Cantu LHWCA benefits.
 
 
 8
 In addition we find Cantu within the perimeters of "employee status" based on the principles announced by the Supreme Court in P.C. Pfeiffer Co., Inc. v. Ford, 444 U.S. 69, 100 S.Ct. 328, 62 L.Ed.2d 225 (1979), which emphasizes that in defining "employee status" the crucial factor is the nature of the activities which a worker may be assigned." Pfeiffer, 444 U.S. at 82, 100 S.Ct. at 337. (Emphasis added). See also Howard v. Rebel Well Service, 632 F.2d 1348, 1350 (5th Cir. 1980) ("Caputo defines status in terms of workers who spend 'at least some of their time' in ship repair"; claimant "was a member of a crew of workers who regularly performed some portion of the traditionally maritime activity of ship repair, thus he was constantly eligible for assignment to that task")[3]; Thibodaux v. Atlantic Richfield Co., 580 F.2d 841, 844 (5th Cir. 1978), cert. denied, 442 U.S. 909, 99 S.Ct. 2820, 61 L.Ed.2d 274 (1979).
 
 
 9
 Finding that Cantu falls within the foregoing principles delineating "employee status" under the LHWCA, we vacate that portion of the decision which originally denied his benefits.
 
 
 10
 MODIFIED IN PART.
 
 
 
 *
 Due to his death on May 15, 1981, Judge Gewin did not participate in this decision. The case is being decided by a quorum. 28 U.S.C. § 46(d)
 
 
 [1]
 The following cases exemplify the various types of recovery allowed. Texports Stevedore Co. v. Winchester, 554 F.2d 245 (5th Cir. 1977), reaff'd en banc, 632 F.2d 504 (1980), (stevedoring gear); Odom Construction Co. v. United States Department of Labor, 622 F.2d 110, 113 (5th Cir. 1980), cert. denied, --- U.S. ----, 101 S.Ct. 1482, 67 L.Ed.2d 614 (1981) (mooring blocks used for barges awaiting stevedoring services at nearby wharf)
 
 
 [2]
 Alabama Dry Dock & Shipbuilding Co. v. Kininess, 554 F.2d 176 (5th Cir.), cert. denied, 434 U.S. 903, 98 S.Ct. 299, 54 L.Ed.2d 190 (1977) (maintaining parts of shipyard crane, not yet assembled but stored and intended for future use in building vessels); Ingalls Shipbuilding Corp. v. Morgan, 551 F.2d 61, 62 (5th Cir. 1977) (injured while cleaning a piece of steel to prepare it for fabrication into a shipbuilding component)
 
 
 [3]
 In Howard, the claimant was employed as a sandblaster and painter at a yard which performed minor repairs on navigable floating barges. Claimant testified that he "mostly" worked on equipment removed from barge rigs and brought to the yard. Although his superior at the yard testified that equipment from the barge rigs comprised only about ten percent of work assigned to the sandblasting crew, the Court found claimant a covered employee under the Act