# IN THE UNITED STATES COURT OF APPEALS

# FOR THE FIFTH CIRCUIT

————————

m 02-60156
Summary Calendar

————————

NORMAN VICKNAIR,

Petitioner,

VERSUS

AVONDALE INDUSTRIES, INC.;
DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS,
UNITED STATES DEPARTMENT OF LABOR,

Respondents.

————————

Appeal from an Order of
the Benefits Review Board
(00-0942)

————————

October 9, 2002

Before HIGGINBOTHAM, SMITH, and
CLEMENT, Circuit Judges.

JERRY E. SMITH, Circuit Judge:[*]

————————

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited
(continued...)

Norman Vicknair filed a claim under the Longshore and Harbor Workers' Compensation Act, as amended, 33 U.S.C. § 901 ("the Act"), against his former employer, Avondale Industries, Inc. ("Avondale"), alleging that while employed at Avondale from 1969 to 1991, he suffered hearing impairment as a result of exposure to loud noises. Because we agree with the Benefits Review Board ("BRB") that the decision of the administrative law judge ("ALJ") was supported by substantial evidence, we affirm.

## I.

Vicknair began working at Avondale in 1969 as a helper and pipefitter. He was exposed to loud noises generated from sledge hammers banging against metal in confined areas and chipping and grinding from other craft. Although he was given ear plugs, he did not always use them.

In 1991, Vicknair left Avondale for Inspection Services Incorporated ("ISI"), his current employer. ISI is a quality assurance company that hires out its employees to oversee work being performed by its clients, who are primarily builders of drilling rigs.

Vicknair performs inspections of offshore drilling platforms during the building process and after completion of the project. Most of his inspections take place in fabrication shops, where the offshore production equipment is made, but he also is responsible for ensuring that the products are properly loaded and unloaded onto barges for shipment offshore. Vicknair testified that he spent approximately three weeks inspecting load-outs during an eight-year period of employment with ISI.

In 1997, an audiogram revealed that Vicknair was suffering from hearing loss. He testified that he was exposed to loud noises while working in fabrication shops at ISI; he denied being exposed to loud noises during load-outs. Although ISI's Vice-President of Operations stated that inspectors could be exposed to loud noises during load-outs, there was no evidence that Vicknair was ever so exposed.

## II.

Vicknair initiated a claim against Avondale under the Act. The ALJ determined that ISI, not Avondale, was the last causative employer, and consequently dismissed the claim. The BRB affirmed the ALJ's decision. Vicknair appeals, contending that the BRB erroneously determined that he was a covered employee under the Act at ISI; even if he is, Vicknair claims that his time spent engaging in maritime duties was *de minimis*. He also argues that ISI cannot be the last causative employer, because he was never exposed to loud noises while performing maritime work there.

## III.

Our review is limited to determining whether the BRB correctly concluded that the ALJ's order was "supported by substantial evidence on the record as a whole and is in accordance with the law." *Avondale Indus., Inc. v. Director, OWCP*, 977 F.2d 186, 189 (5th Cir. 1992) (citations omitted).[1] The substan

---

*(...continued)
circumstances set forth in 5TH CIR. R. 47.5.4.

[1] Substantial evidence is defined as "more than a mere scintilla of evidence, which a reasonable mind might accept as adequate to support a conclusion." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 477 (1951); *see also Avignone Freres, Inc. v. Cardillo*, 117 F.2d 385, 386 (D.C. Cir. 1940) (stating that substantial evidence is "such relevant evidence that a reasonable mind might
(continued...)

tial evidence standard is less demanding than is the preponderance of the evidence standard, and the ALJ's decision need not constitute the sole inference that can be drawn from the facts. *Diamond M. Drilling Co. v. Marshall*, 577 F.2d 1003, 1005 (5th Cir. 1978) (citations omitted). As fact-finder, the ALJ determines questions of credibility of witnesses and of conflicting evidence. *Atl. Marine, Inc. v. Bruce*, 661 F.2d 898, 900 (Former 5th Cir. Nov. 1981).

## IV.

A two-pronged test determines whether an injured worker falls under the provisions of the Act and thus is entitled to benefits. A claimant must satisfy the Act's status requirement, 33 U.S.C. § 902(3), and its situs requirement, 33 U.S.C. § 903(a). The status requirement defines those employees considered to be engaged in maritime employment.[2] The situs requirement requires that an employee's injury take place upon the navigable waters of the United States, which includes in part any adjoining wharf, dry dock, or terminal. For purposes of the Act, a maritime employer is an "employer any of whose employees are employed in maritime employment, in whole or in part." 33 U.S.C. § 902(4).

The employer responsible for paying full benefits in an occupational disease case, including a hearing loss case, is the last maritime

---

[1](...continued)
accept as adequate to support a conclusion").

[2] Section 902(3) defines "employee" as "any person engaged in maritime employment, including any longshoreman or other person engaged in longshoring operations, and any harbor-worker including a ship repairman, shipbuilder, and shipbreaker . . . ." 33 U.S.C. § 902(3).

employer to expose the employee to injurious stimuli before the date when he becomes aware that he is suffering from an occupational disease arising out of his employment. *Avondale*, 977 F.2d at 189; *Travelers Ins. Co. v. Cardillo*, 225 F.2d 137, 145 (2d Cir. 1955). Section 20(a) of the Act provides a presumption that claims fall within the provisions of the Act "in the absence of substantial evidence to the contrary." 33 U.S.C. § 920(a). An employer may rebut the § 20(a) presumption by showing that the "employee was exposed to injurious stimuli while performing work covered under the [Act] for a subsequent employer." *Avondale*, 977 F.2d at 190 (citation omitted).

Initially, the ALJ found that Vicknair had presented sufficient evidence to create a presumption that his hearing loss was causally related to his employment at Avondale. The ALJ determined, however, that Avondale had rebutted the presumption by establishing that Vicknair was exposed to injurious noise while working at ISI, a subsequent maritime employer.

## A.

Vicknair first argues that at ISI, he has not engaged in work covered under the Act. A claimant engages in maritime employment if he is engaged in work that is integral to the loading, unloading, constructing, or repairing of vessels. *See* 33 U.S.C. § 902(3); *Chesapeake & Ohio Ry. v. Schwalb*, 493 U.S. 40, 45 (1989). An employee need only spend "at least some of his time in indisputably covered activities" before he is considered to have engaged in maritime employment. *Northwest Marine Terminal Co. v. Caputo*, 432 U.S. 249 (1977).

In *Boudloche v. Howard Trucking Co.*, 632

F.2d 1346 (5th Cir. Unit A 1980), we decided that a truck driver who unloaded his cargo onto ships was engaged in maritime employment. *Id.* at 1348. "The fact that his employer also assigned him broader duties as a truck driver cannot override its choice to make [the claimant] a maritime employee under the Act." *Id.*

Vicknair does not dispute that the inspection of load-outs qualifies as the type of work contemplated by § 902(3).[3] He instead argues that because he spent only three weeks inspecting load-outs during an eight-year period,[4] his maritime activities are insufficient to qualify him under the Act. We reject his argument. In *Boudloche*, we emphasized that an employee need only spend "some" of his time, but not a "substantial portion," engaging in maritime work. *Id.* Because Vicknair testified that he "sometimes" inspected the load-out process, his activities undoubtedly fall within the scope of § 902(3).

Vicknair still contends that coverage is unwarranted, because his participation in load-outs was *de minimis*. In *Boudloche*, in finding that the truck driver claimant engaged in maritime employment, we left open the question of when an employee's longshoring activities might become "so momentary or episodic [that] it will not suffice to confer status." *Id.* Importantly, the truck driver in *Boudloche* spent only 2½% to 5% of his working time performing longshoring activities. *Id.* Nevertheless, we declined to address whether he met a *de minimis* threshold, because he was "directed to regularly perform" longshoring activities. Id. Vicknair argues that his longshoring activities were *de minimis* because his load-out inspections constituted less than one percent of his overall working time.

This court has never attempted to quantify a precise mathematical point at which an employee's maritime activities become *de minimis*. Instead, *Boudloche* indicates that as long as an employee is directed regularly to perform some portion of what is indisputably maritime work, his activity will not be considered momentary or episodic.[5]

---

[3] In arguing that the load-out inspections were *de minimis*, Vicknair notes that the monitoring was done at a distance and that his purpose was "not to get involved with the actual procedure." Even if we were to construe this observation as an argument that load-out inspections do not qualify as maritime work under the Act, it would fail under our "expansive view" of § 902(3). *Caputo*, 432 U.S. at 268.

An employee satisfies the status requirement of § 902(3) where he engages in work that is "integral" to the loading, unloading, constructing, or repairing of vessels. *Id.* at 271. Those personnel not directly involved in the loading or unloading of cargo, such as inspectors, have consistently been determined to be covered under § 902(3). *E.g.*, *id.* (permitting coverage for employee whose job was to check and mark items of cargo); *Levins v. BRB*, 724 F.2d 4, 9 (1st Cir. 1984) (permitting coverage of a book clerk who identified and recorded cargo).

[4] Based on a forty-hour work week, Vicknair spent less than one percent of his work time inspecting load-outs.

[5] *See Lennon v. Waterfront Transp.*, 20 F.3d 658, 661 (5th Cir. 1994) (applying *Boudloche* for the proposition that claimant's handling of cargo was "sufficiently regular so as not to be considered episodic"); *see also Levins*, 724 F.2d at 9 (noting that a "*de minimis* situation" does not exist, because claimant's maritime activities "were part
(continued...)

4

There is substantial evidence that Vicknair was so directed. Michael Foret, ISI's office manager, deposed that Vicknair's duties were essentially to oversee projects from beginning to completion. Foret stated that an inspector goes "wherever he would be required to perform his duties." He stated that an inspector's duties include making sure that products manufactured in fabrication yards are properly loaded and tied down on barges for shipment offshore. The fact that Vicknair's inspection of load-outs was a regular part of his duty of seeing projects completed from beginning to end directs the conclusion that his maritime activities were not *de minimis*.[6]

### B.

Vicknair also contends that he does not satisfy the Act's status requirement because there is no evidence that he was exposed to injurious noises while engaging in maritime activities at ISI.[7] In effect, Vicknair argues that he was a covered employee while performing load-out inspections, but not non-maritime activities.

Vicknair is correct that the record is void of evidence that he was exposed to loud noises while inspecting load-outs at ISI. No witnesses disputed his testimony that the crane's used during these load-outs produced only moderate amounts of noise. Although William Downey stated that inspectors might be exposed to loud noises during load-outs if welders or gougers are present, there was no evidence that Vicknair participated in these load-outs. Instead, the evidence shows that his exposure to loud noises occurred only while he performed non-maritime work in fabrication shops.

Nevertheless, the fact that Vicknair's exposure to injurious stimuli came only while he performed non-maritime work does not defeat his status as a maritime employee under § 902(3). In *Hullinghorst Indus., Inc. v. Carroll*, 650 F.2d 750 (5th Cir. Unit A July 1981), we held that maritime employee status can be based "*either* upon the maritime nature of the claimant's activity at the time of his injury *or* upon the maritime nature of his employment as a whole." *Id.* at 754 (emphasis added).

Permitting coverage based on the overall

---

[5](...continued)
of his regularly assigned duties as a whole"); *Graziano v. Gen. Dynamics Corp.*, 663 F.2d 340, 343 (1st Cir. 1981) ("Although only 2.5 to 5 percent of Boudloche's overall employment was maritime in character, the Fifth Circuit extended coverage because 'he was directed to regularly perform some portion of what was indisputably longshoring work.'").

[6] *See Levins*, 724 F.2d at 9 ("These do not appear to have been discretionary or extraordinary occurrences, but rather a regular portion of the *overall* tasks to which petitioner could have been assigned as a matter of course.") (citations omitted).

[7] Vicknair also argues that his hearing did not get worse after he left Avondale, implying perhaps that he was not exposed to injurious stimuli at ISI.
(continued...)

[7](...continued)
As the BRB points out, however, this argument is irrelevant, because the last-employer rule does not require a causal relationship between the subsequent employment and hearing loss. Rather, the exposure to injurious stimuli need only have the potential to cause hearing impairment. *See Avondale*, 977 F.2d at 190 (stating that "regardless of the brevity of exposure, if it has the potential to cause disease, it is considered injurious") (citation omitted).

maritime nature of employment is consistent with Congress's intent to prevent longshoremen from walking in and out of coverage.[8]  Because we already have established the overall maritime nature of Vicknair's employment, we reject his argument that a lack of exposure to noise while performing maritime work defeats coverage under § 902(3).[9]

Because we agree that there was substantial evidence supporting the ALJ's decision, the order of the BRB is AFFIRMED.

---

[8] *Caputo*, 432 U.S. at 273 ("[T]o exclude [an employee] from the Act's coverage in the morning but include him in the afternoon would be to re-vitalize the shifting and fortuitous coverage that Congress intended to eliminate.").  In *Caputo*, the Court specifically rejected the "point of rest" theory that would have assigned coverage based on whether the employee was engaged in a maritime activity at the time of injury.  *Caputo*, 432 U.S. at 275-76.

[9] Notably, Vicknair does not invoke the Act's situs requirement, § 903(a), in his attempt to argue that ISI is not the last causative employer.  Section 903(a) requires that a compensable injury occur "upon the navigable waterways of the United States," including a dry dock or wharf.

Even if Vicknair had made this argument, we are doubtful that the situs requirement applies to subsequent employers in cases applying the last-employer rule.  As a "rule of liability assessment, not of jurisdiction," *Fulks v. Avondale Shipyards, Inc.*, 637 F.2d 1008, 1012 (5th Cir. 1981), the last-employer rule requires only that the claimant be exposed "to injurious stimuli while performing work covered under the [Act] for a subsequent employer."  *Avondale*, 977 F.2d at 190 (citation omitted).

Whether work is covered under the Act is an issue independent of the situs requirement, which deals only with the location of injury.  Moreover, the nature of occupational diseases, unlike injury,

(continued...)

[9](...continued)
"makes it exceedingly difficult, if not practically impossible, to correlate the progression of the disease with specific points in time or specific industrial experiences." *Cardillo*, 225 F.2d at 144.

6