Benny R. GILLIAM, Petitioner,

v.

WILEY N. JACKSON COMPANY, Fidelity Casualty Company of New York and Director, Office of Workers' Compensation Programs, Respondents.

No. 80–5804.

United States Court of Appeals, Fifth Circuit.*
Unit B

Oct. 15, 1981.

As Amended Feb. 3, 1982.

Toole, Taylor, Moseley & Joyner, Almer W. Beale, II, Jacksonville, Fla., for petitioner.

John E. Houser, Jacksonville, Fla., for Wiley N. Jackson Co.

Mark C. Walters, U. S. Dept. of Labor, NDOL, Washington, D. C., Janet R. Dunlop, U. S. Dept. of Labor, Washington, D. C., for other interested parties.

Before FRANK M. JOHNSON, Jr., HATCHETT, Circuit Judges, and SCOTT **, District Judge.

CHARLES R. SCOTT, District Judge:

We are called upon to consider the propriety of the denial of a claim for benefits under the Longshoremen's and Harbor Workers' Compensation Act (hereinafter "the Act"), 33 U.S.C. § 901 et seq.

Claimant Gilliam was injured while supervising and assisting in the off-loading of pilings from a barge docked in the Amelia River where it passes through Fernandina Beach, Florida. His claim for benefits under the Act was denied by the administrative law judge. The Benefits Review Board (with one judge dissenting) affirmed the denial of benefits, finding that Gilliam was not a covered employee within the terms of the Act. *Gilliam v. Wiley N. Jackson Co.*, 12 BRBS 556 (1980). Specifically, the board

---

* Former Fifth Circuit case, Section 9(1) of Public Law 96–452—October 14, 1980.

** District Judge of the Middle District of Florida, sitting by designation.

determined that Gilliam failed to meet the "status" requirement contained in Section 2(3) of the Act, 33 U.S.C. § 902(3), because he was never "engaged in maritime employment." This conclusion was based upon the board's opinion that Gilliam's work lacked "a realistically significant relationship to maritime activities involving navigation and commerce over navigable waters." We disagree.

### The Facts

Gilliam had been employed by the Wiley N. Jackson Company (hereinafter "the Employer") in various capacities for approximately 21 years prior to sustaining his injury. The Employer is a construction company, engaging primarily in the activities of bridge building and road grading. For the last ten years of his employment, Gilliam worked as a construction site foreman. At the time of his injury, Gilliam's employer was in the process of constructing two parallel high-rise bridges over the Amelia River, which is a part of Florida's Intracoastal Waterway, in Fernandina Beach, Florida.

The Employer had contracted with a supplier to have pilings to be used in the bridge construction delivered to the job site via barge. The barge, loaded with pilings, was to journey 110 miles up the Intracoastal Waterway from Daytona Beach, Florida. In anticipation of the barge's arrival, Gilliam, on the day prior to sustaining his injury, supervised and assisted in the build-ing of a dock abutting the shoreline at the construction site. The dock served as a mooring site for the barge and as a secure location for placement of a crane to facilitate off-loading of the pilings from the barge onto the shore.

Shortly prior to his injury, Gilliam was standing on the barge supervising and assisting in the transference of the pilings from the barge to the shore. He had already assisted in hooking the crane cables to several loads of pilings prior to their removal from the barge. Part of his duty was to supervise the order in which the groups of pilings were removed to prevent too much weight from being lifted off of any particular area of the barge, thereby ensuring that the barge remained stable in the water. At the time of his injury, Gilliam was waiting for the crane cables to descend so that he could connect them to another load of pilings. In attempting to avoid being struck by the descending cables, Gilliam fell onto the surface of the barge. He suffered serious head and shoulder injuries.

### The Law

These facts, as they relate to the issue of Gilliam's status as an employee under the Act, are not in dispute. Consequently, we are concerned only with whether Gilliam met the status requirement as a matter of law.[1]

---

1. In addition to the status requirement, a claimant under the Act must meet a "situs" requirement; that is, it is necessary that the claimant's injury occurred on the "navigable waters of the United States" as defined in Section 3(a) of the Act, 33 U.S.C. § 903(a). All parties are in agreement that Gilliam's injury occurred on navigable waters of the United States and, hence, that he met the situs requirement.

Prior to 1972, the navigable waters of the United States included only the area seaward of the so-called *Jensen* line, established in *Southern Pacific Co. v. Jensen*, 244 U.S. 205, 37 S.Ct. 524, 61 L.Ed. 1086 (1917). The *Jensen* line ran along the water's edge, skirting around piers and docks. Thus, for example, in *Nacirema Operating Co. v. Johnson*, 396 U.S. 212, 90 S.Ct. 347, 24 L.Ed.2d 371 (1969), the Supreme Court held that coverage did not extend to longshoremen killed or injured on a pier while attaching cargo to ships' cranes. This was true even though coverage might have inured had the longshoremen been knocked into the water, that is, across the *Jensen* line. *See Northeast Marine Terminal Company, Inc. v. Caputo*, 432 U.S. 249, 259, 97 S.Ct. 2348, 2555, 53 L.Ed.2d 320, 330 (1977). The Court recognized the anomaly of such a result, but concluded it was up to Congress to extend coverage of the Act landward. 396 U.S. at 223–24, 90 S.Ct. at 353–54.

Congress accepted this invitation in 1972, amending the definition of navigable waters to include "... any adjoining pier, wharf, dry dock, terminal, building way, marine railway, or other adjoining area customarily used by an employer in loading, unloading, repairing or building a vessel ...." 33 U.S.C. § 903(a). At the same time, Congress amended the definition of employee so as to delineate some limitations to the expanded coverage of the Act. 33 U.S.C. § 902(3); see text *infra*.

■ "Employee" is defined in Section 2(3) of the Act, 33 U.S.C. § 902(3), in pertinent part as follows:

> The term "employee" means any person engaged in maritime employment, including any longshoreman, or other person engaged in longshoring operations, and any harbor worker . . . .

Thus, the essential test of employee status under the Act is that the person seeking compensation was "engaged in maritime employment." *Hullinghorst Industries, Inc. v. Carroll,* 650 F.2d 750, 754 (5th Cir. 1981).

■ The board rejected petitioner's argument that, because he was performing longshoring activities (i. e., unloading the barge) at the time of his injury, he was engaged in maritime employment.[2] The board was of the opinion that the proper focus was upon the claimant's overall job duties rather than upon the particular activity he was performing at the time of his injury.[3] Gilliam was a construction worker, the board concluded, not a longshoreman. His unloading of the barge was merely incidental to his occupation as a construction worker. As such, the board concluded that Gilliam's work lacked a "realistically significant relationship to maritime activities involving navigation and commerce over navigable waters."

Respondent Director, Office of Workers' Compensation, United States Department of Labor, filed a brief on behalf of the petitioner herein, arguing that because petitioner was injured on navigable waters it is unnecessary that he meet the Act's status requirement. The Director argues that prior to the 1972 amendments to the Act virtually all persons injured on navigable waters, regardless of their status, were covered. In enacting the 1972 amendments, Congress clearly intended to extend coverage of the Act to certain land-based workers who nevertheless were engaged in maritime employment. In so doing, Congress did not, the Director contends, intend to restrict the coverage already afforded by the Act. Thus, the Director argues that Gilliam was protected by the Act, regardless of whether he was engaged in maritime employment, simply because he was injured on navigable waters.
Because we find that Gilliam met the status requirement, see text *infra,* we find it unnecessary to rule upon the Director's argument and decline to do so.

Contrary to the contention of petitioner, although the cases are not uniform, there is support in the law of this circuit for the board's use of the "realistically significant relationship" test. *Hullinghorst Industries, Inc. v. Carroll, supra,* at 756; *Mississippi Coast Marine v. Bosarge,* 637 F.2d 994, 998 (5th Cir. 1981); *Odom Construction Company, Inc. v. United States Department of Labor,* 622 F.2d 110, 113 (5th Cir. 1980). The recent cases make it clear, however, that the inquiry of whether the claimant's work bore a realistically significant relationship to traditional maritime activity can properly be directed to the particular job the claimant was performing at the time he was injured, rather than his overall occupational duties. In other words, it is sufficient for the purpose of proving status under the Act that the claimant's activity *at the time he was injured* had a realistically significant relationship to traditional maritime employment.

In *Odom Construction Company, Inc. v. United States Department of Labor, supra,* the claimant was a land-based construction worker who was injured while attempting to remove four large concrete blocks from a navigable canal. The blocks, which had been used to moor barges, had slipped into the water due to the erosion of the canal bank. This Court affirmed the award of disability benefits to the claimant, stating:

2.  Petitioner contended in his brief submitted to the Benefits Review Board that his involvement in constructing the dock was the equivalent of harbor work. This is a tenable argument. However, the board's opinion, as well as the transcript of the oral argument before the board, reflect that claimant's counsel expressly abandoned his reliance upon the harbor work claim. Inasmuch as we find that claimant was a covered employee due to his longshoring activities at the time of injury, see text *infra,* it is unnecessary to consider what impact his work in constructing the dock had upon his status under the Act.

3.  In rejecting a "moment of injury" test, the board relied upon two of its prior decisions, both of which have since been reversed by this Court. *Howard v. Rebel Well Services,* 11 BRBS 568, *rev'd,* 632 F.2d 1348 (5th Cir. 1980); *Boudloche v. Howard Trucking Co.,* 11 BRBS 689 (1979), *rev'd,* 632 F.2d 1346 (5th Cir. 1980).

On the facts before us, *where the job being done* clearly had "a realistically significant relationship to 'traditional maritime activity involving navigation and commerce on navigable waters' . . .," [citing cases] *Maze's work at the time of his injury was maritime.*

622 F.2d at 113 (emphasis added).

*Odom* was the first decision of this Court to incorporate the "realistically significant relationship test."[4] The language quoted above was technically dicta, however, as the Court in *Odom* ultimately relied upon the overall circumstances of the claimant's employment to justify the award of benefits.

Arguably, our decision that Maze is a covered employee could be based solely upon the foregoing conclusion that he was engaged in maritime work at the time of his injury. [citing cases] We need not rest on this narrow ground, however, but can look at all the circumstances of Maze's employment.

*Id.*

The Court concluded that claimant was a covered employee because 20 percent of his work time was spent engaged in maritime employment.

A recent opinion of this Court decided unequivocally the question that the *Odom* panel decided inferentially. In *Hullinghorst Industries, Inc. v. Carroll*, 650 F.2d 750 (5th Cir. 1981), the panel held that a claimant can meet the status test by showing *either* that his occupation as a whole is devoted to maritime employment *or* that he was engaged in maritime employment at the time of his injury. *Id.* at 754, *citing Thibodaux v. Atlantic Richfield Co.*, 580 F.2d 841, 844 (5th Cir. 1978), *cert. denied*, 442 U.S. 909, 99 S.Ct. 2820, 61 L.Ed.2d 274 (1979).

Thus, in *Hullinghorst*, the claimant was found to have employee status for purposes of the Act even though he was a carpenter by trade. His only connection with maritime employment was his participation in the construction of scaffolding beneath a pier extending over the Mississippi River. The sole purpose of the scaffolding was to provide a place for port facility employees to stand while repairing a piece of equipment used in the loading and unloading of ships. Neither the claimant nor his employer participated in any way in the actual repair work on the loading equipment. Yet the claimant's work was nevertheless found to bear a "realistically significant relationship to 'traditional maritime activity involving navigation and commerce on navigable waters' . . . ." *Id.* at 755.

Other decisions, both of this Court and of the United States Supreme Court, make it clear that the definition of employee in Section 2(3) of the Act extends coverage to occupations beyond those specifically enumerated in the statute. *P. C. Pfeiffer Company, Inc. v. Ford*, 444 U.S. 69, 77 n.7, 100 S.Ct. 328, 334 n.7, 62 L.Ed.2d 225, 233 n.7 (1979); *Northeast Marine Terminal Company, Inc. v. Caputo*, 432 U.S. 249, 265 n. 25, 97 S.Ct. 2348, 2358 n. 25, 53 L.Ed.2d 320, 334 n. 25; *Trotti & Thompson v. Crawford*, 631 F.2d 1214 (5th Cir. 1980) (carpenter engaged in constructing a pier was covered employee); *Boudloche v. Howard Trucking Co.*, 632 F.2d 1346 (5th Cir. 1980) (truck driver injured while loading small boats into his truck was a covered employee).

Clearly, Gilliam was performing longshoring activities at the time he was injured. The Supreme Court has observed that "longshoreman, or any other person engaged in longshoring operations . . . ." includes any person who performs tasks traditionally performed by longshoremen. *P. C. Pfeiffer Company, Inc. v. Ford, supra*, 444 U.S. at 82, 100 S.Ct. at 337, 62 L.Ed.2d at 236. In defining "traditional" longshoring activities, the Supreme Court, as well as the legislative history of the Act, speak in terms of "unloading a vessel" and "handling of cargo." *Northeast Marine Terminal Company, Inc. v. Caputo, supra*, 432 U.S. at 267, 97 S.Ct. at 2359, 53 L.Ed.2d at 335.

---

4. The "realistically significant relationship" test was apparently first employed by the Ninth Circuit Court of Appeals. *Weyerhauser Co. v. Gilmore*, 528 F.2d 957, 961 (9th Cir. 1975), *cert. denied*, 429 U.S. 868, 97 S.Ct. 179, 50 L.Ed.2d 148 (1976).

It can hardly be disputed that the pilings in the case *sub judice* were cargo. They traveled 110 miles over navigable waters to reach their intended destination. Similarly, the barge upon which the pilings traveled was clearly a vessel. It was not simply a work platform used to facilitate construction of the bridges. Gilliam was unloading the pilings from the barge when he was injured. Therefore, Gilliam was unloading cargo from a vessel and, hence, was engaging in longshoring activities at the time he was injured.[5] It is that simple.

The fact that the pilings he was unloading were to be used to build a bridge does not add a different gloss to the situation. As petitioner points out in his brief, only a minute percentage of cargo actually bears a direct relationship to maritime employment. Certainly, had the pilings been off-loaded at a port, destined to be shipped to an inland location for another purpose, no one would contend that they did not constitute maritime cargo.

Because Gilliam was engaged in maritime employment, i. e., longshoring, at the time of his injury, it follows *a fortiori* that his work had a realistically significant relationship to maritime activities involving navigation and commerce. *See Hullinghorst Industries, Inc. v. Carroll, supra,* at 756; *Odom Construction Company, Inc. v. United States Department of Labor, supra,* at 113. As such, Gilliam met the status requirement of Section 2(3), 33 U.S.C. § 902(2) and was a covered employee within the terms of the Act.[6]

Accordingly, we REVERSE the decision of the Benefits Review Board and REMAND this cause for further proceedings to consider the extent of claimant's injuries and the amount of benefits to which he is entitled.

REVERSED and REMANDED.

---

5. In reaching our decision, we are guided by the observation of the Supreme Court that the provisions of the Act are broad and should be liberally construed to effect the remedial purpose underlying the Act. *Northeast Marine Terminal Company, Inc. v. Caputo,* 432 U.S. 249, 268, 97 S.Ct. 2348, 2359, 53 L.Ed.2d 320, 335 (1977).

6. Our holding does not stand for the proposition that all persons injured while engaged in bridge building are covered employees. Rather, it is limited to a finding that, under the facts before us, this particular claimant was engaged in maritime employment at the time of his injury and, hence, was an employee within the terms of the Act.