**Elizabeth BROWNING, Widow of Joseph D. Browning, Petitioner-Appellant,**

v.

**B. F. DIAMOND CONSTRUCTION COMPANY, U. S. Fidelity and Casualty Company of New York, and Director, Office of Workers' Compensation Programs, United States Department of Labor, Respondents-Appellees.**

No. 81–5656.

United States Court of Appeals, Eleventh Circuit.

May 17, 1982.

Adams, Adams, Brennan & Gardner, Richard J. Harris, Savannah, Ga., for petitioner-appellant.

John E. Houser, Jacksonville, Fla., for B. F. Diamond Const. Co.

Janet R. Dunlop, U. S. Dept. of Labor, Washington, D. C., for Director, Office of Workers' Compensation Programs.

Before FAY, VANCE and ARNOLD *, Circuit Judges.

ARNOLD, Circuit Judge:

This is a petition for review of a decision of the Benefits Review Board denying claimant, Mrs. Elizabeth Browning, widow of Joseph D. Browning, benefits under the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. §§ 901 et seq. The issue is whether Mr. Browning was a covered employee under 33 U.S.C. § 903(a). The Board determined that he was not, and we now reverse.

Browning was killed while employed as a rig foreman in charge of the operation of a crane barge. Mrs. Browning made a claim for benefits which was initially denied by an administrative law judge (ALJ). Then the Benefits Review Board of the Department of Labor affirmed the denial of benefits (with one judge dissenting), finding that Browning was not a covered employee within the meaning of the Act. The Board's specific holding, which we now reverse, was that Mr. Browning was not engaged in "longshoring operations" under § 2(3) of the Act, 33 U.S.C. § 902(3).

## I.

Browning was employed by B. F. Diamond Construction Company, a company engaged in various maritime construction projects along the Atlantic and Gulf coasts. He was working as a rig foreman in the construction of a bridge that was to span the waters of the Gulf of Mexico and the Choctawhatchee Bay in Okaloosa County, Florida.

Browning was supervising a crane barge and an adjacent "steel barge" which held metal forms and other construction materials. The crane barge was used to set the metal forms in place around "cages" made of steel reinforcement rods. These steps were in preparation for the pouring of concrete within the forms to construct the bridge columns. Of course, an integral part of this process was the unloading of the steel forms and other materials from the steel barge. All this activity took place in about twenty feet of water some 500 to 600 feet from shore.

The ALJ found, and it is not disputed, that on August 24, 1978, at the time of the fatal mishap, Browning was standing atop a "footing" made up of pre-cast piles driven into the riverbed. There were no eyewitnesses to the incident, but Browning was found later crushed to death by one of the "cages," which apparently broke loose and fell on him. As for Browning's activity at this time, there was testimony that he was highlighting certain engineering marks with spray paint to facilitate the process of setting the metal forms around the "cages."

## II.

These facts are not in dispute. What is disputed is the proper legal conclusion to be drawn about Browning's status as an employee under the Act. Essentially, one is an "employee" if one is "engaged in maritime employment." 33 U.S.C. § 902(3).[1] This employee status can be based upon the maritime nature of the employment as a whole or upon the maritime nature of the claimant's activity at the time of the injury. Hullinghorst Industries, Inc. v. Carroll, 650 F.2d 750, 754 (5th Cir. 1981), cert. denied, —— U.S. ——, 102 S.Ct. 1037, 71 L.Ed.2d 319 (1982); Thibodaux v. Atlantic Richfield Co., 580 F.2d 841, 844 (5th

---

* Honorable Richard S. Arnold, U. S. Circuit Judge for the Eighth Circuit, sitting by designation.

1. Section 2(3) of the Act, 33 U.S.C. § 902(3), reads:

 The term "employee" means any person engaged in maritime employment, including any longshoreman or other person engaged in longshoring operations, and any harbor-worker including a ship repairman, shipbuilder, and ship breaker, but such term does not include a master or member of a crew of any vessel, or any person engaged by the master to load or unload or repair any small vessel under eighteen tons net.

Cir. 1978), *cert. denied,* 442 U.S. 909, 99 S.Ct. 2820, 61 L.Ed.2d 274 (1979).

■ Petitioner argues that Browning was engaged in maritime activity at the time of his injury and therefore was within the Act's coverage.[2] She cites *Gilliam v. Wiley N. Jackson Co.,* 659 F.2d 54 (5th Cir. 1981), which she contends cannot be distinguished from the case at bar. In that case the claimant Gilliam worked for a construction company primarily engaged in bridge building and road grading. While supervising and assisting the unloading of construction materials from a barge to the shore, Gilliam was struck in the head by crane cables that were to be attached to the materials being unloaded.

The *Gilliam* court thought it clear that "Gilliam was performing longshoring activities at the time he was injured." *Id.* at 57. This conclusion was based on a reading of *Northeast Marine Terminal Co. v. Caputo,* 432 U.S. 249, 97 S.Ct. 2348, 53 L.Ed.2d 320 (1977), and the legislative history of the Act, which describe " 'traditional' longshoring activities ... in terms of 'unloading a vessel' and 'handling cargo.' " *Gilliam, supra,* 659 F.2d at 57, quoting *Northeast Marine, supra,* 432 U.S. at 267, 97 S.Ct. at 2359. The court went on to say:

> Gilliam was unloading the pilings from the barge when he was injured. Therefore, Gilliam was unloading cargo from a vessel and, hence, was engaging in longshoring activities at the time he was injured. It is that simple.

*Gilliam, supra,* 659 F.2d at 58 (footnote omitted).

Given this precedent we consider the case at bar to be just as simple. Browning, at the time of his injury, was involved with the unloading of the metal forms from a barge moored in navigable waters. On this point the record is clear, as the following exchange between the ALJ and claimant's counsel demonstrates:

ALJ: Well, isn't the testimony that he was the—either the rig foreman, I believe, was the title or designation given to him, that he was in charge of, of the crane operator on this barge, his responsibilities were the, to see that the, this construction on this particular platform or pier was carried out according to the specifications. Isn't that, is there any dispute as to that?

CLAIMANT'S COUNSEL: No sir. There is no dispute as to that at all. In a general sense that is what his responsibilities are. I'm talking about specifically what was he doing at the time this accident took place.

I think the evidence will show if we were able to produce this live testimony that at the time—or could at least look and see what these people know—that at the time of the accident he was involved in directing the operations of this crane operator and in moving the steel forms into place.

ALJ: Well, is—

CLAIMANT'S COUNSEL: (Interrupting) But in the process, if you will, of unloading these forms from the barge and loading them on top of this concrete platform for—part of his job.

ALJ: Hasn't the record established, been established at this point, that that was a part of his job and a portion of his responsibilities?

CLAIMANT'S COUNSEL: Yes, sir.

Transcript of hearing before the ALJ, pp. 109–10. The conclusion that Browning was

---

**2.** Petitioner, joined by respondent Director of the Office of Workers' Compensation Programs, makes two other arguments for reversal of the Board's decision: first, that Browning's employment, viewed as a whole, was maritime in nature; and second, that the 1972 Amendments to the Act were not intended by Congress to withdraw coverage of employees previously within the protection of the Act. Because Browning would have been entitled to coverage under the pre-1972 Act by reason of his injury upon navigable waters, they argue that he should now be covered without regard to the nature of his activities at the time of the injury. See *Churchill v. Perini North River Associates,* 652 F.2d 255 (2d Cir. 1981), *cert. granted,* —— U.S. ——, 102 S.Ct. 1425, 71 L.Ed.2d 647 (1982). Because we agree with petitioner's argument that Browning was engaged in maritime activities at the time of his injury, it is unnecessary for us to address these additional arguments.

engaged in longshoring activities cannot be avoided. It is enough that Browning was "directly involved" with the unloading of a vessel at the time of his injury. *Jacksonville Shipyards, Inc. v. Perdue*, 539 F.2d 533, 539–40 (5th Cir. 1976), *aff'd sub nom. P. C. Pfeiffer Co. v. Ford*, 444 U.S. 69, 100 S.Ct. 328, 62 L.Ed.2d 225 (1979). Therefore we conclude that Browning was an employee within the terms of the Act.

Two additional requirements must be met before a claimant is entitled to coverage: (1) the claimant's employer must qualify as an "employer" under 33 U.S.C. § 902(4), and (2) the injury must have occurred on "navigable waters" as defined by 33 U.S.C. § 903(a).

It is not disputed that Browning's employer, B. F. Diamond Construction Company, comes within the terms of § 902(4). And though the issue of whether Browning was injured while on "navigable waters" was not explicitly decided by the ALJ or the Review Board, no real question is raised on this point. Thus Browning was a covered employee within the terms of the Act.

Accordingly, we REVERSE the decision of the Benefits Review Board and REMAND this cause for further proceedings to consider the appropriate benefits to be awarded.

It is so ordered.