***Clyde Jackson Crowe and Veronica Crowe v. CSX Transportation, Inc.***,
No. 922, September Term 2018
Opinion by Eyler, James R., J.

Occupational diseases-FELA-LHWCA claims

Clyde Jackson Crowe and his spouse, Veronica Crowe, filed suit in the Circuit Court for Baltimore City against CSX Transportation, Inc. (CSX), seeking damages under the Federal Employer's Liability Act (FELA), 45 U.S.C. §§51-60. The Crowes alleged that Mr. Crowe was exposed to asbestos fibers, in the 1960s, while employed by CSX. In 2016, Mr. Crowe was diagnosed with mesothelioma, allegedly caused by that exposure.

The circuit court entered summary judgment in favor of CSX on the ground that Mr. Crowe's claim was covered by the Longshore and Harbor Workers' Compensation Act (LHWCA), 33 U.S.C. §§901-950, which constituted the exclusive remedy.

In 1972, Congress amended the LHWCA to expand coverage to land based port workers who are "engaged in maritime employment." Prior to 1972, Mr. Crowe worked at a port facility but on land; thus; he was not covered by the LHWCA.

The Crowes contended that the 1972 amendment could not lawfully be retroactively applied to him or, in the alternative, that he was not "engaged in maritime employment."

Held that Mr. Crowe is engaged in maritime employment and that the 1972 amendment applies to him. Mr. Crowe did not sustain an injury until manifestation of his disease. Application of the 1972 amendment is consistent with the Congressional intent to extend coverage to additional workers and to convert conduct-based fault liability under the FELA to non-fault compensation under the LHWCA. The LHWCA provides the exclusive remedy.

Circuit Court for Baltimore City
Case No.: 24X16000585

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 922

September Term, 2018

_____

CLYDE JACKSON CROWE AND
VERONICA CROWE

v.

CSX TRANSPORTATION, INC.

_____

Fader, C.J.,
Graeff,
Eyler, James R.
  (Senior Judge, Specially Assigned),

JJ.

_____

Opinion by Eyler, James R., J.
_____

Filed:  August 28, 2019

*Meredith, Arthur and Gould, JJ., did not participate in the Court's decision to designate this opinion for publication pursuant to Md. Rule 8-605.1.

Pursuant to Maryland Uniform Electronic Legal Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

Clyde Jackson Crowe, and his wife, Veronica Crowe, filed suit in the Circuit Court for Baltimore City against CSX Transportation, Inc. (CSX), and nineteen other defendants, seeking damages under the Federal Employer's Liability Act (FELA), 45 U.S.C. §§ 51-60, in pertinent part, alleging that Mr. Crowe was exposed to asbestos during his employment with CSX and that such exposure caused him to develop malignant mesothelioma.

CSX filed a motion to dismiss or, in the alternative, for summary judgment, arguing that Mr. Crowe's claim for damages against CSX under FELA was barred because the Longshore and Harbor Workers' Compensation Act (LHWCA), 33 U.S.C. §§ 901-950, provided his exclusive remedy against CSX for employment-related claims. Following oral argument, the circuit court granted CSX's motion and entered judgment in favor of CSX. This appeal followed.

Mr. Crowe presents two issues for our review, which we have rephrased as follows:[1]

1. Did the circuit court err in concluding that Mr. Crowe's FELA claim against CSX is barred by the LHWCA?

2. Assuming the 1972 Amendments to the LHWCA apply to Mr. Crowe's claims, does he meet the "status" requirement of a maritime employee under the 1972 Amendments to the LHWCA?

---

[1] The issues presented, as framed by Mr. Crowe, are:

1. Can the 1972 Amendments to the LHWCA retroactively extinguish Mr. Crowe's rights and CSX's liabilities under the FELA?

2. Assuming the 1972 Amendments to the LHWCA apply to Mr. Crowe's claims, did the Amendments change his work from railroad work to "maritime" work such that the "status" requirement of the 1972 Amendments is satisfied?

For the reasons stated below, we conclude that the 1972 Amendments apply to Mr. Crowe; Mr. Crowe was a maritime worker within the meaning of the Amendments; and the LHWCA provides the exclusive remedy. Thus, the circuit court did not err in entering judgment in favor of CSX. We affirm the judgment of the circuit court.

## BACKGROUND

From 1960 to 1969, Mr. Crowe was employed by Western Maryland Railway, predecessor to CSX,[2] as a railway operator and foreman at the Port Covington railyard and port facility in Baltimore, Maryland. The operations at that location consisted of loading and unloading ships; storing the freight in warehouses; and shipping the goods to customers via railcars and trucks. Mr. Crowe's job duties included supervising the loading of freight from the warehouses onto railcars and trucks. According to Mr. Crowe, twice per year between 1960 and 1969, burlap bags of raw asbestos arrived by ship at Port Covington. Dockworkers unloaded the burlap bags of asbestos from ships using a metal hook. The hook frequently tore holes in the burlap bags, allowing raw asbestos to spill from the bags. Dockworkers loaded the bags of asbestos onto pallets and delivered them to warehouses for storage. The bags of asbestos could remain in the warehouses for up to one month before they were shipped out on railcars or trucks.

While supervising the railroad workers who loaded the stored bags of asbestos onto railcars and trucks, he was in close contact with the workers handling bags of asbestos, including torn bags. On occasion, Mr. Crowe participated in physically moving the freight.

_____

[2] Western Maryland Railway and CSX shall be referred to collectively as "CSX".

2

Mr. Crowe was exposed to asbestos fibers in the warehouse and during the loading of the asbestos bags onto railcars and trucks.

On August 30, 2016, Mr. Crowe was diagnosed with malignant mesothelioma, allegedly caused by his exposure to asbestos fibers from 1960 to 1969. On December 21, 2016, he and Mrs. Crowe brought a personal injury action in circuit court under FELA.

## DISCUSSION

In this case, the circuit court did not specify whether it granted CSX's motion to dismiss or motion for summary judgment. The motion papers were supported by answers to interrogatories and deposition testimony. When, as here, a trial court considers materials outside the complaint, we ordinarily treat a motion to dismiss as a motion for summary judgment. We review the grant of the motion "without deference for legal correctness." *Floyd v. Mayor & City Council of Baltimore*, 463 Md. 226, 241 (2019), *reconsideration denied* (May 16, 2019). Because a circuit court's decision to grant summary judgment is a question of law, our review is *de novo*. *Vito v. Grueff*, 453 Md. 88, 104 (2017).

## FELA

FELA was enacted to provide a tort remedy for railroad employees who were injured in the course of their employment caused by the negligence of the employer. *Merrill v. Chicago & Illinois Midland Ry.*, 751 F. Supp. 770, 772 (C.D. Ill. 1990). FELA, 45 U.S.C. § 51 provides, in part:

> Every common carrier by railroad while engaging in ... [interstate commerce] ... shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, ... resulting in whole or in part from the negligence of any of the officers, agents or employees of such

3

carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment.

FELA retained a fault system. The basis of liability is negligence, but it abolished the common law defenses of contributory negligence, assumption of the risk, and the fellow servant rule. *Consolidated Rail Corp. v. Gottshall*, 512 U.S. 532, 542-543 (1994). "The FELA law is a hybrid. It hovers ambivalently between workers' compensation law and the common law tort of negligence. It is neither, but it partakes of characteristics of both." *CSX Transp., Inc. v. Miller*, 159 Md. App. 123, 129 (2004). FELA was enacted in 1906, at a time when few states had workers' compensation laws, and thousands of railroad workers were being injured, maimed, and killed on the railways. *Id.* at 130. "FELA has been defended as more advantageous to railroad employees than an act patterned on workers' compensation statutes." Philip D. Oliver, *Once Is Enough: A Proposed Bar of the Injured Employee's Cause of Action Against A Third Party*, 58 Fordham L. Rev. 117, 172 (1989). We have recognized that "although the FELA is not a workers' compensation act, the social forces that produced it and the generating spirit that drives it resonate with the language and philosophy of workers' compensation principles." *CSX Transp., Inc. v. Miller*, 159 Md. App. at 131.

## LHWCA

By the 1920s and before the LHWCA was enacted in 1927, a longshore worker injured on the land side of a port facility was generally covered by state workers' compensation statutes. A worker injured on the seaward side generally had no remedy. In *Southern Pacific Co. v. Jenson*, 244 U.S. 205 (1917), the Supreme Court held that a state

4

had no power to extend a compensation remedy to workers on the seaward side. The LHWCA was enacted to provide benefits to seaside workers. "The LHWCA is remedial legislation intended to provide a remedy to workers injured during longshoring activities." *Merrill*, 751 F. Supp. at 775; 33 U.S.C. § 903. The LHWCA was enacted to provide federal workers' compensation benefits to maritime workers who sustained injuries upon "navigable waters" but were not covered by federal admiralty and did not have other remedies. *Northeast Marine Terminal Co. v. Caputo,* 432 U.S. 249, 257-58 (1977); *Merrill*, 751 F. Supp. at 775. The LHWCA provides for the payment of compensation "in respect of disability or death" caused by an injury that occurred on navigable waters. 33 U.S.C. §903.

Initially, the LHWCA's coverage was interpreted to exclude maritime workers who suffered injuries on land. *See Nacirema Operating Co. v. Johnson,* 396 U.S. 212, 223 (1969). Under the caselaw prior to 1972, the "situs" determined the applicability of the LHWCA, and the dividing line was the water's edge. This created "anomalous and inconsistent results" in the coverage available to injured longshore workers. *P. C. Pfeiffer Co. v. Ford*, 444 U.S. 69, 72 (1979); *Merrill*, 751 F. Supp. at 775. *See, e.g., Davis v. Department of Labor and Industries of Washington*, 317 U.S. 249 (1942).

In 1972, Congress amended the LHWCA and expanded the definition of "navigable waters of the United States" to include areas such as adjoining piers, docks and terminals customarily used in the loading, unloading, building and maintenance of ships. *Caputo,* 432 U.S. at 263-64. *See* 33 U.S.C. § 903(a). The 1972 Amendments thereby extended the

5

location or "situs" requirement under the LHWCA to include maritime employees injured on water and land. *Id.*

At the same time, Congress also enacted a "status" requirement for employees to qualify for compensation under the LHWCA. *P.C. Pfeiffer Co.,* 444 U.S. at 73-74; 33 U.S.C. § 902(3). The status test broadened the definition of persons covered by the LHWCA to include workers "engaged in maritime employment."

> The Act now extends coverage to more workers by replacing the single-situs requirement with a two-part situs and status standard. The newly broadened situs test provides compensation for an "employee" whose disability or death "results from an injury occurring upon the navigable waters of the United States (including any adjoining pier, wharf, dry dock, terminal, building way, marine railway, or other adjoining area customarily used by an employer in loading, unloading, repairing, or building a vessel)." § 3(a), 33 U.S.C. § 903(a). The status test defines an employee as "any person engaged in maritime employment, including any longshoreman or other person engaged in longshoring operations, and any harborworker including a ship repairman, shipbuilder, and shipbreaker . . . ." § 2(3), 33 U.S.C. § 902(3). To be eligible for compensation, a person must be an employee as defined by § 2(3) who sustains injury on the situs.

*P.C. Pfeiffer Co.,* 444 U.S. at 73-74; 33 U.S.C. § 902(3).

As applied, the term "maritime employment" embodies an occupational rather than a geographic concept. *P.C. Pfeiffer Co.,* 444 U.S. at 79. Individuals performing jobs other than those specifically listed under § 902(3) satisfy the "status" requirement if they are engaged in some portion of the activity of moving cargo from ship to land based customers. *Id*. at 82-83. In determining whether a person is engaged in maritime employment, "the crucial factor is the nature of the activity to which a worker may be assigned." *Id.* at 82.

6

Under the LHWCA, the liability of an employer is "exclusive and in place of all other liability of such employer to the employee." 33 U.S.C. § 905(a). A railroad employee who is covered by the LHWCA is barred from pursuing an action against his or her employer under FELA. *Hayes v. CSX Transp. Inc*., 985 F.2d 137, 139 (4th Cir. 1993) (citing *Chesapeake & Ohio Ry. v. Schwalb,* 493 U.S. 40, 42 (1989); *Vogelsang v. Western Md. Ry.,* 670 F.2d 1347-48 (4th Cir. 1982)). "The LHWCA preempts the FELA as to railroad employees engaged in maritime employment." *Conligio v. Norfolk & W. Ry. Co.*, 670 F. Supp. 1353, 1354 (E.D. Mich. 1987) (citing *Pennsylvania R.R. Co. v. O'Rourke,* 344 U.S. 334, 73 (1952)) (internal quotation marks omitted).

**Analysis**

**I.**

The issue before us is whether Mr. Crowe's claim is covered by the 1972 Amendments to the LHWCA. If the claim is covered, the LHWCA preempts FELA and provides the exclusive remedy. At the time of Mr. Crowe's exposure to asbestos between 1960 and 1969, FELA provided a remedy for railroad employees who were injured on land in the course of their employment. The LHWCA did not. Mr. Crowe argues that he sustained an "injury at work" when he was exposed to asbestos in the 1960's, before the Amendments became effective. Relying primarily on *Landgraf v. USI Film Prods.*, 511 U.S. 244 (1994), Mr. Crowe argues that application of the 1972 Amendments to him would result in an unlawful retroactive application of the LHWCA, depriving him of his FELA claim. Mr. Crowe observes that his benefits under FELA, if allowed, would be greater than

7

the benefits available under the LHWCA.[3] He argues that applying the 1972 Amendments to the LHWCA would change the legal consequences of CSX's conduct that occurred in the 1960s.

Relying on *John Crane, Inc. v. Scribner*, 369 Md. 369 (2002), Mr. Crowe further argues that his claim arose on exposure even though manifestation of the disease is when, under FELA, his cause of action would have accrued for limitations purposes. *See Schweitzer v. Consol. Rail Corp.,* 758 F.2d 936, 942 (3d Cir. 1985) ("[A]s a matter of federal law, F.E.L.A. actions for asbestos-related injury do not exist before manifestation of injury."). Thus, in the absence of application of the 1972 Amendments, he could make a claim under FELA based on the manifestation of his disease in 2016. The ultimate question, according to Mr. Crowe, is whether the 1972 Amendments can reclassify him from a railroad worker to a maritime worker.

CSX contends that Mr. Crowe's employment satisfies the "status" and "situs" tests of the LHWCA, as amended in 1972. CSX argues that Mr. Crowe was "injured" for purposes of the LHWCA in 2016, when he was diagnosed with mesothelioma, and therefore, application of the 1972 Amendments to his claim does not constitute a retroactive application of the statute. CSX observes that "disability or death" is the trigger for benefits under the LHWCA. It argues that Congress expressly determined that the LHWCA Amendments cover all occupational disabilities and deaths that occur after the Amendments' effective date. Preliminarily, we acknowledge that we are not aware of any

___

[3] We assume that statement to be true for purposes of resolving the issues before us.

reported appellate decision addressing retroactivity that is squarely on all fours with the facts of this case.

Retroactivity is generally disfavored in the law. *Landgraf v. USI Film Products*, 511 U.S. 244, 267 (1994). Statutory retroactivity can present problems of unfairness "because it can deprive citizens of legitimate expectations and upset settled transactions." *General Motors Corp. v. Romein,* 503 U.S. 181, 191 (1992). "Elementary considerations of fairness dictate that individuals should have an opportunity to know what the law is and to conform their conduct accordingly; settled expectations should not be lightly disrupted." *Landgraf*, 511 U.S. at 265.

In *Landgraf*, the Supreme Court held that provisions of the Civil Rights Act of 1991 did not apply to a sexual harassment case under Title VII of the Civil Rights Act of 1964 pending on appeal when the 1991 Act became effective. *Landgraf*, 511 U.S. at 244. The 1991 Act subjected the employer to increased liability and potential compensatory and punitive damages, which were not previously available under the statute. *Id*. at 250. The Court ultimately determined that subjecting the employer to liability under the 1991 Act for compensatory and punitive damages had the retroactive effect of requiring employers to pay for the harms that they caused and created a "new legal burden" or cause of action for past conduct. *Id*. at 282-83.

The Supreme Court explained that "[a] statute does not operate retrospectively merely because it is applied in a case arising from conduct antedating the statute's enactment." *Id*. at 269. A statute has retroactive effect if "it would impair rights a party

possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." *Id.* at 280.

"[D]eciding when a statute operates 'retroactively' is not always a simple or mechanical task." *Id*. at 268. The Supreme Court set forth a three-part analysis in *Landgraf* for determining whether a statute applies retroactively to cases that arise before its enactment. *Id*. at 280-85. The first step of the analysis is to determine whether "Congress has expressly prescribed the statute's proper reach." *Id*. at 280. If Congress has expressly stated that the statute should be applied retroactively, there is no need to resort to rules of statutory construction. *Id*.

If a statute does not expressly prescribe its own proper reach, a court must proceed to the second step and consider whether the statute "would have retroactive effect, *i.e.*, whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." *Id*. If the court concludes that the statute would have retroactive effect, the court must consider the third step in the analysis, which provides that the statute will not apply to pre-enactment conduct "absent clear congressional intent favoring such a result." *Id*. The Court explained that "[t]he conclusion that a particular rule operates 'retroactively' comes at the end of a process of judgment concerning the nature and extent of the change in the law and the degree of connection between the operation of the new rule and a relevant past event." *Id*. at 270.

Applying the *Landgraf* analysis in the present case, we begin by observing that Congress, in the 1972 Amendments, did not expressly address the retroactive effect on

10

workers who were previously not covered under the LHWCA, who sustained latent occupational injuries, and who were covered under the 1972 Amendments. Nevertheless, Congress implicitly expressed that intent. It clearly intended to extend the LHWCA's coverage to protect additional workers. *Northeast Marine Terminal*, 432 U.S. at 251. It also preempted the FELA with respect to railroad employees engaged in maritime employment, *Conligio*, 670 F. Supp. at 1354, clearly intending to convert conduct-based fault liability to non-fault compensation. Nevertheless, we shall consider all aspects of the *Landgraf* analysis. *Landgraf* at 280.

Mr. Crowe argues that, under step two of the *Landgraf* analysis, application of the 1972 Amendments to his claim would have a retroactive effect because it would "immunize the railroad's negligent conduct and alleviate the legal burdens attached to that conduct, as well as impair [his] rights with respect to injuries sustained as a result of that conduct." Prior to 1972, CSX was liable under FELA for work-related injuries to employees, caused by its negligence. The 1972 Amendments had the effect of changing the nature of CSX's liability from negligence liability in tort under FELA, to no-fault workers' compensation liability under LHWCA. Unlike the statutory amendment at issue in *Landgraf* which subjected the employer to increased compensatory and punitive damages, the 1972 Amendments changed CSX's exposure from an uncertain amount to a fixed no-fault compensation plan. Applying the *Landgraf* factors, we conclude that Congress favored this result, and the result does not unlawfully affect "completed transactions."

Apparently recognizing that federal courts of appeal that have considered the question have held that a cause of action under the LHWCA does not accrue until

11

manifestation of the disease, *see infra*, Mr. Crowe contends that the "determinative issue" in whether a statute is being applied retroactively is not the accrual date of the cause of action, but the effect that the change in the law has on the parties' prior conduct. As explained in the concurrence in *Landgraf* , the "critical issue" for application of the retroactivity analysis "is not whether the rule affects 'vested rights,' or governs substance or procedure, but rather what is the relevant activity that the rule regulates." *Id.* at 291, 114 S. Ct. 1522 (Scalia, J., concurring). *See also I.N.S. v. St. Cyr*, 533 U.S. 289, 292-93 (2001) ("The second question is a substantive one, concerning the impact of the amendments on the conduct that occurred before their enactment ….").

In this case, the "relevant activity" of Mr. Crowe's asbestos exposure resulted in the type of work-related injury that is often covered by workers' compensation statutes. Unlike statutes designed to regulate conduct, such as civil rights statutes, worker's compensation statutes are intended to compensate injured workers without regard to fault. "Most statutes are meant to regulate primary conduct, and hence will not be applied in trials involving conduct that occurred before their effective date. But other statutes have a different purpose and therefore a different relevant retroactivity event." *Landgraf,* 511 U.S. at 291, 114 S. Ct. at 1524 (Scalia, J., concurring).

Worker's compensation statutes account for the fact that employers may not have been aware of the occupational dangers posed by certain toxins at the time of the employee's exposure, and, therefore, the imposition of liability on employers as a matter of deterrence is disfavored. *Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 17-18 (1976) (holding that application of the Black Lung Benefits Act to former employees' claims for

12

black lung disease did not violate due process, even though employees may have terminated their employment before the Act was passed). "[T]he imposition of liabilities for the effects of disabilities bred in the past is justified as a rational measure to spread the costs of the employees' disabilities to those who have profited from the fruits of their labor [employers and consumers]." *Id*. at 18. Here, the purpose of the 1972 Amendments does not support a finding of a retroactive effect because the Amendments were not directed at affecting the parties' prior conduct.

In determining whether the 1972 Amendments had a retroactive effect, we must also consider, however, whether the Amendments impaired the rights a party possessed when it acted. *See Landgraf,* 511 U.S. at 280. It has long been recognized that "no person has a vested right in any general rule of law or policy of legislation entitling him to insist that it remain unchanged for his benefit." *Chicago & Alton R.R. v. Tranbareer,* 238 U.S. 67, 76 (1915). Although rights need not be "vested" in order for the presumption against retroactivity to apply, *Landgraf,* 511 U.S. at 275 n. 29, "[a] statute does not operate 'retrospectively' merely because … it upsets expectations based in prior law." *Id*. at 269.

Whether Mr. Crowe was injured at the time he was exposed to asbestos, or at the time the disease manifested in 2016, is an important factor in the determination of whether he had a right that would be infringed upon by retroactive application of the statute. If Mr. Crowe was "injured" at the time he was exposed to asbestos, he would have a right to recovery under FELA that would be infringed by application of the 1972 Amendments to his claim.

13

Mr. Crowe's "injury" came into existence in 2016 when he was diagnosed with mesothelioma, and therefore, the events giving rise to his claim occurred after the enactment of the 1972 Amendments. Prior to that time, he had, at most, an "expectation" that if he ever developed an occupational disease, he could bring a FELA action to recover damages. In *Urie v. Thompson*, 337 U.S. 163, 170-71 (1949), the Supreme Court held that a worker's occupational disease claim did not accrue for purposes of limitations until manifestation of the disease. The Supreme Court explained:

> There is no suggestion that Urie should have known he had silicosis at any earlier date. 'It follows that no specific date of contact with the substance can be charged with being the date of injury, inasmuch as the injurious consequences of the exposure are the product of a period of time rather than a point of time; consequently the afflicted employee can be held to be 'injured' only when the accumulated effects of the deleterious substance manifest themselves * * *.' *Associated Indemnity Corp. v. Industrial Accident Commission*, 124 Cal.App. 378, 381, 12 P.2d 1075, 1076. The quoted language, used in a state workmen's compensation case, seems to us applicable in every relevant particular to the construction of the federal statute of limitations with which we are here concerned.

Manifestation is the triggering event under FELA and is the triggering event under LHWCA. *See Schweitzer*, 758 F.2d at 936; *Brown & Root, Inc. v. Sain*, 162 F.3d 813, 816 (4th Cir. 1998).

The third step of the *Landgraf* analysis requires that, before concluding that a statute has a retroactive effect, a court must determine whether there is "clear congressional intent" favoring application of the statute to pre-enactment conduct. *Landgraf*, 511 U.S. at 280. "If a court, employing traditional tools of statutory construction, ascertains that Congress

14

had an intention on the precise question at issue, that intention is the law and must be given effect." *Chevron v. Natural Resources Defense Council,* 467 U.S. 837, 843 (1984).

The legislative history of the 1972 Amendments does not specifically address the applicability of the Amendments in the case of latent occupational disease.[4] When Congress amended the LHWCA again in 1984, however, it expressed a clear intent to adopt the "date of manifestation" approach to determining the date of injury in cases of latent occupation disease under the LHWCA. *Castorina v. Lykes Bros. S.S. Co.*, 758 F.2d 1025 (5th Cir. 1985). In *Castorina*, a longshoreman who was exposed to asbestos before the 1972 Amendments, and diagnosed with asbestosis after the 1972 Amendments, sought damages under LHWCA and general maritime law from the shipowner responsible for his asbestos exposure. The 1972 Amendments to the LHWCA "significantly restricted an injured longshoreman's potential claims against vessel owners." *Id*. at 1029. Specifically, the Amendments abolished the longshoreman's remedy against the shipowner for unseaworthiness, and limited the longshoreman's recovery to a negligence action against the shipowner. *Id.*

---

[4] Mr. Crowe argues that the comment of a legislator during congressional debate of the 1972 Amendments, as referenced in *Cooper Stevedoring of Louisiana, Inc. v. Washington*, 556 F.2d 268, 272 n.5 (5th Cir. 1977), that "of course, this bill is not retroactive" supports his position that the 1972 Amendments were not intended to apply to claims of former employees for latent occupational diseases. Mr. Crowe's reliance on the comment is misplaced because, as pointed out by the court in *Cooper Stevedoring of Louisiana Inc.*, the legislator's retroactivity comment related to an issue involving longshoremen's claims against third parties, which was not before the court in that case, nor is it an issue in this case.

15

Castorina argued that, for purposes of determining the applicable version of the LHWCA, the date of his injury was the last date of his exposure to asbestos, which was prior to 1972. *Id.* at 1030. He argued that application of the manifestation rule would result in inequities because a longshoreman suffering traumatic injury before 1972 would be afforded a seaworthiness remedy, whereas a longshoreman who developed a latent disease would be afforded the same remedy only if the disease actually manifested itself before 1972. *Id.*

The Fifth Circuit relied on the legislative history of the 1984 Amendments to the LHWCA in deciding that the date of manifestation of a latent disease was the date of injury for purposes of determining the remedies available to a claimant. Specifically, Section 28(g) of the Amendment provided:

> "(g) For the purpose of this section -
>
> (1) in the case of an occupational disease which does not immediately result in a disability or death, an injury shall be deemed to arise on the date on which the employee or claimant becomes aware, or in the exercise of reasonable diligence or by reason of medical advice should have been aware, of the disease . . ." Pub. L. No. 98-426, § 28(g)(1), 98 Stat. 1639, 1655.

*Castorina*, at 1031. The court explained that "the legislative history of the amendments demonstrates that Congress expressly rejected the 'time of last exposure' approach to determining the date of injury and recognized that it is the disability itself, not mere exposure to a toxic substance, that should trigger an injured worker's rights under the Act." *Id.* at 1031 (citing H.R. Rep. No. 98-570, Part I, 98th Cong. 2nd Sess. 10, *reprinted*

16

*in* 1984 U.S. Code Cong. & Ad. News 2734, 2743; H.C.R. No. 98-1027, 98th Cong.2nd Sess. 30, *reprinted in* 1984 U.S. Code Cong. & Ad. News 2771, 2779-2780).

The Fifth Circuit's decision in *Castorina* is consistent with many other federal courts holding that the date of manifestation of a latent disease is the date of injury for purposes of determining whether a claimant is covered under the 1972 Amendments to the LHWCA. *See Todd Shipyards Corp. v. Black*, 717 F.2d 1280, 1290 (9th Cir. 1983) (adopting the "time of manifestation" approach as the date of injury, noting that an average worker would not consider himself 'injured' at the time he ingested asbestos fibers and not every exposed worker develops pulmonary disease); *SAIF Corp./Oregon Ship v. Johnson*, 908 F.2d 1434 (9th Cir. 1990) (holding that the date of manifestation of asbestosis in 1979 constituted the date of injury under LHWCA and an employee who was exposed to asbestos on land adjoining navigable waters before the 1972 Amendments was entitled to recover under LHWCA); *Newport News Shipbuilding and Dry Dock Co. v. Harris*, 934 F.2d 548, 551-52 (4th Cir. 1991) (concluding that the date of manifestation controls in LHWCA cases in the context of deciding when to utilize the special fund created pursuant to section 8(f) of the LHWCA); *Ins. Co. of N. Am. v. U.S. Dep't of Labor, Office of Workers Comp. Programs,* 969 F.2d 1400 (2d Cir. 1992) (holding that the 1972 Amendments to the LHWCA in effect on the date that cancer manifested itself applied rather than law in effect at time of last asbestos exposure); *cert. denied*, 113 S. Ct. 1253 (1993); *Sain*, 162 F.3d at 816 (holding that under the LHWCA, in the case of a latent occupational disease such as asbestosis, the time of injury is time of manifestation of disease, rather than time of exposure).

The decision in *Scribner, supra*, is irrelevant to the issue before us. In that case, the issue involved the application of a damages cap, an issue of State law. For purposes of the cap, the Court of Appeals held that the time of causative exposure governed. 369 Md. at 397. The question before us is one of federal law, and as we have seen, the federal courts of appeal have held that because the LHWCA speaks in terms of "disability or death" it necessarily carries with it the concept of manifestation. Because Mr. Crowe is covered by the LWHCA, it follows that benefits under the act are the sole remedy.

In *Harmon, supra*, a worker employed by a railroad company sustained a physical injury while working on a coal pier. Although the opinion does not contain the date of the injury, presumably it was after the 1972 Amendments. Harmon argued that, although he was covered under the LHWCA, he should also have coverage under the FELA. The court's comments are relevant here.

> Harmon next argues that even if he is covered under the LHWCA-which we hold he is-the provision making that statute the exclusive remedy for job-related injuries does not apply to railway employees, like Harmon, whose injuries would have been covered under FELA prior to the 1972 amendments to LHWCA. Harmon contends that only an express repeal by Congress of the pre-existing FELA coverage could deprive him of FELA coverage. Such an interpretation of the legislative process is as novel as it is static. Congress need not contemplate every jot and tittle of impact before it passes a statute; nor can the courts freeze existing statutes so as to avoid the clear intention of Congress to change the interplay of statutes one to another. Admittedly, prior to 1972 Congress provided workers' compensation under FELA for injuries such as Harmon's. The authority of Congress to change such coverage, however, whether by direct amendment of FELA or by expanding coverage under LHWCA, is beyond the challenge Harmon seeks to make.

Finally, Harmon urges that since coverage under LHWCA, as amended in 1972, has not necessarily precluded coverage under state workers' compensation laws, he similarly should be allowed to pursue remedies under both FELA and LHWCA. We reject this argument. Section 5 of LHWCA specifically provides that the liability of an employer under the Act "shall be exclusive and in place of all other liability of such employer to the employee." 33 U.S.C. § 905(a) (1982). In *Nogueira v. New York, New Haven & Hartford R.R. Co.,* 281 U.S. 128, 130-31, 50 S. Ct. 303, 74 L. Ed. 754 (1930), the Supreme Court specifically held that the language must be given its plain meaning and that the remedy under LHWCA is exclusive. In *Pennsylvania R.R. Co. v. O'Rourke,* 344 U.S. 334, 338, 73 S. Ct. 302, 304, 97 L. Ed. 367 (1952), the Court reiterated this holding, stating that FELA could not apply to a case where LHWCA provided coverage. Harmon makes no effort to distinguish the clear language of Section 5 and the explicit holdings of these cases. Indeed, were we to adopt Harmon's argument, therein ignoring the holdings of *Nogueira* and *O'Rourke,* Section 5 would be deprived of any meaning whatsoever.

*Harmon,* 741 F.2d at 1404-05.

We conclude that the 1972 Amendments to the LHWCA do not have a retroactive effect on Mr. Crowe's claim against CSX. The 1972 Amendments did not attach "new legal consequences to events completed before its enactment" because the event at issue in this case is Mr. Crowe's work-related injury which, according to federal authorities, occurred in 2016 when he was diagnosed with mesothelioma. The version of the LHWCA in effect at the time that Mr. Crowe's disease manifested in 2016 did not impair any rights that he previously possessed, nor did it impose new duties on CSX. The determining factor under the LHWCA is when the disability or death occurred, assuming the status and situs test is met, not the employer's conduct.

19

As the Supreme Court explained, "Even absent specific legislative authorization, application of new statutes passed after the events in suit is unquestionably proper in many situations. When the intervening statute authorizes or affects the propriety of prospective relief, application of the new provision is not retroactive." *Landgraf*, 511 U.S. at 273. In this case, Mr. Crowe's claim against CSX seeks prospective relief under the 1972 Amendments to the LHWCA because it was filed after the 1972 Amendments to the LHWCA became effective.

> Even uncontroversially prospective statutes may unsettle expectations and impose burdens on past conduct: a new property tax or zoning regulation may upset the reasonable expectations that prompted those affected to acquire property; a new law banning gambling harms the person who had begun to construct a casino before the law's enactment or spent his life learning to count cards.

*Landgraf,* 511 U.S. at 269 n. 24.

## II.

To qualify for coverage under the LHWCA, an employee must meet both the "status" and "situs" requirements of the statute. Mr. Crowe asserts that even if the 1972 Amendments apply to his claim, he did not satisfy the "status" test created by the Amendments because he was not "engaged in maritime employment" as provided in 33 U.S.C. § 902(3). Mr. Crowe does not dispute that his work in the CSX warehouse in Port Covington satisfied the "situs" test under 33 U.S.C. § 903(a).

The LHWCA does not define "maritime employment," but the Supreme Court has recognized that all employees who are "involved in the essential or integral elements of the loading or unloading process, *Schwalb*, 493 U.S. at 46, or are "engaged in the intermediate

20

steps of moving cargo between ship and land transportation," *P.C. Pfeiffer Co. Inc.*, 444 U.S. at 83, are engaged in maritime employment for purposes of coverage under the LHWCA.

In *P.C. Pfeiffer*, the Court determined that Ford, an employee who fastened military vehicles to flat railroad cars for further inland transportation after the vehicles had been unloaded from ships, was engaged in maritime employment under LHWCA. *P.C. Pfeiffer*, 444 U.S. at 83. In that case, the vehicles were not moved directly from the ship to the railcars, but were taken first to a storage area. *Id*. at 71. The Court rejected the notion that an interruption in the unloading process created by the storage of cargo before its final shipment marked the end of the unloading process. *Id*. at 81-82. The Court explained that the work of unloading the stored cargo was as integral a part of moving maritime cargo from a ship to land transportation, as if the unloading was part of a continuous, uninterrupted process. *Id*. at 82-83.

In *Northeast Marine Terminal Co. v. Caputo*, 432 U.S. at 272, the Supreme Court determined that a "checker" who worked at a pier checking and marking cargo as it was unloaded from ships and a terminal laborer who worked at a pier rolling a dolly of ship cargo into a consignee's truck, were included within the definition of maritime employment. Putting the cargo in the consignee's truck was said in *Caputo* to be the final step in the process of moving cargo from maritime to land transportation. *Caputo,* 432 U.S. at 272. *See also Vogelsang*, 670 F.2d at 1347 (railroad worker who was injured unloading already unloaded cargo from a pier onto railroad cars was participating in the final step of unloading process and, therefore, was engaged in "maritime employment"

21

under LHWCA, and was unable to pursue claim against employer under FELA); *Hayes v. CSX Transp., Inc*., 985 F.2d 137 (4th Cir. 1993) (railroad employee responsible for guiding crane operator in loading cargo on outbound flatbed railroad car and securing the load in place was "integral to the unloading process" and engaged in maritime employment under the LHWCA).

We conclude that Mr. Crowe's job duties of supervising the loading of stored cargo from the pier warehouse to railcars and trucks for further inland shipment satisfied the definition of maritime employment under LHWCA. Mr. Crowe was engaged in the final, integral step in the unloading process of moving cargo "directly from ship to land transportation" or "responsible for some portion of that activity." *P.C. Pfeiffer Co.,* 444 U.S. at 82-83.

The fact that Mr. Crowe was employed as a railroad worker while supervising the loading of cargo was immaterial. As the Supreme Court explained in *P.C. Pfeiffer Co.*, "it is the nature of the activity to which a worker may be assigned," that determines whether the worker is engaged in maritime employment. *P.C. Pfeiffer Co.,* 444 U.S. at 82. "If Congress had wanted to exclude [from the coverage of LHWCA] railroad workers who performed traditional longshoreman-type work, it could have done so," as "Congress was certainly aware of the Supreme Court's decision in *O'Rourke*, 344 U.S. 334, 73 S. Ct. 302, 97 L. Ed. 367 (1952), which extended the LHWCA coverage to railroad employees performing maritime employment." *Congligio*, 670 F. Supp. at 1356.

Courts have recognized that railroad workers engaged in varying shipyard tasks are covered by the LHWCA rather than FELA. *See Chesapeake and Ohio Ry. Co. v. Schwalb*,

22

493 U.S. at 47 (railroad workers responsible for cleaning spilled coal from area below conveyer system between railcars and ships qualified for coverage under LHWCA because they were "essential to the loading and unloading process"); *Price v. Norfolk & W. Ry. Co.*, 618 F.2d 1059 (4th Cir. 1980) (railroad worker injured while painting structure of equipment used to load and unload grain from ships was covered by LHWCA); *Vogelsang*, 670 F.2d 1347 (railroad worker injured while directing train loaded with ore that had been unloaded from ships was covered under LHWCA); *Harmon*, 560 F. Supp. 914 (D.D.C. 1983) (railroad worker who performed repair, maintenance, and carpentry on structures used in coal-loading process was covered under LHWCA); *Conligio*, 670 F. Supp. 1353 (locomotive engineer who was injured due to confusion in signals while loading railcars onto a barge was covered under LHWCA).

Mr. Crowe's status as a supervisor does not exempt him from coverage under the LHWCA. Mr. Crowe qualified as a maritime employee based on the nature of the activity he was assigned; the loading of freight from the warehouse on to railcars and trucks. Moreover, Mr. Crowe acknowledged that he sometimes performed the tasks of the workers he supervised, for example, "[i]f the forklift driver had to go to the men's room … [he] would jump on the lift truck and put the pallet upon the truck."

"Only 'harsh and incongruous results' would follow from an interpretation that the [LHWCA, as amended] cover[s] those actually engaged in performing the [maritime] services, but do not reach those who supervise the conduct of that same work. … Form would become exalted over substance." *Ducrepont v. Baton Rouge Marine Enterprises, Inc.*, 666 F. Supp. 882, 888 (E.D. La. 1987) (holding that supervisors of repair operations

23

are persons "employed to provide repair services" just as supervisors of longshoring activities are deemed "engaged" in longshoring activity for purposes of the LHWCA), *aff'd*, 877 F.2d 393 (5th Cir. 1989) (citing *Caputo*, 432 U.S. at 268). *See also Gilliam v. Wiley N. Jackson Company,* 659 F.2d 54 (5th Cir. 1981), *cert. denied,* 459 U.S. 1169 (1983) (holding that a construction site foreman who merely supervised the unloading of a barge was equally engaged in maritime employment for purposes of LHWCA).

Applying these principles to the present case, we conclude that the LHWCA, as amended, applies to Mr. Crowe and that the remedy is exclusive. Having decided liability and exclusiveness, it is of no moment whether Mr. Crow is also covered under the FELA. Thus, we conclude that the circuit court did not err in entering judgment in favor of CSX.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY AFFIRMED. COSTS TO BE PAID BY APPELLANT.**